UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH MAXEY,

                                    Petitioner,                    DECISION AND ORDER

-vs-
                                                                   17-CV-6425 (CJS)
STEWART ECKERT, *Superintendent*,

                                    Respondent.

_____

## I. INTRODUCTION

In 2013, Petitioner Joseph Maxey, Jr., was tried in Wayne County (New York) Court, and convicted by a jury verdict of multiple sex offenses against his three stepdaughters: one count of predatory sexual assault against a child (N.Y. Penal Law § 130.96), six counts of rape in the third degree (§ 130.25), two counts of rape in the second degree (§ 130.30), and two counts of endangering the welfare of a child (§ 260.10). The trial court sentenced him to an aggregate term with a minimum of 65 years of imprisonment, and a maximum of life. The New York appellate division upheld Maxey's conviction and sentence, and the Court of Appeals denied him leave to pursue a further appeal. The trial court has also denied Maxey's motions for post-conviction relief under New York Criminal Procedure Law § 440.10.

Maxey now applies to this Court for federal habeas relief pursuant to 28 U.S.C. § 2254, arguing that the trial court violated his due process rights by allowing the prosecution to overload their case with *Molineux* evidence, and that he was denied the effective assistance of counsel when his trial attorney failed to present material exculpatory evidence at trial and failed to obtain an expert witness to rebut the prosecution's expert regarding Child Sexual Abuse Accommodation Syndrome. Pet., 6–7, June 29, 2017, ECF No. 1. Maxey also maintains he was denied the right to a fair trial and due process by prosecutorial misconduct during closing

arguments. Am. Pet. at 7. Respondent opposes Maxey's application. For the reasons set forth below, Maxey's application [ECF No. 1] is denied.

## II. BACKGROUND[1]

The following is a summary of the relevant facts that a jury could have reasonably found from the evidence presented at Maxey's trial in June 2013. The mother ("Mother") of the three victims in this case married Maxey in July 2006. At the time of their marriage, Mother already had four children: Victim 1, a daughter born in July 1993; Victim 2, a daughter born in September 1995; Victim 3, a daughter born in June 1998; and son ("Son"), who was 13 years old at the time of trial. In or around December 2007, Maxey, Mother, and Mother's four children moved together into a house at 33 Galen Street in Clyde, New York. Maxey and Mother were leading a youth group at the Baptist church across the street, and the church allowed them to live in the house while they searched for a permanent home. In May 2009, the family moved to a house on 40 Elm Street, where they lived together until June 2012.

The indictment against Joseph Maxey accused him of multiple instances of sexual abuse of his three stepdaughters during that time. For instance, the charge for predatory sexual assault against a child alleged that between February and September 2008, Maxey engaged in two or more acts of sexual conduct, including at least one act of sexual intercourse or oral sexual conduct, with Victim 2, who was 12 years old at the time; multiple rape charges alleged specific instances of sexual intercourse with Victim 1 between Winter 2008 and Winter 2010, when she was between 14 and 16 years old; and one of the child endangerment charges alleged that during March, April, and May 2012, Maxey subjected Victim 3 to sexual contact when she was younger than 13 years old.

---

[1] Sealed Trial Tr., pp. 228–773.

At trial, the prosecution presented numerous witnesses to prove the charges, including Maxey's three victims. Victim 1 testified that she was 14 years old in the Winter of 2008 when she moved with her family and Maxey into the house at 33 Galen Street. She stated that within two or three months of moving in, Maxey began touching her vagina as they watched movies together in the living room, while the other children were asleep in their upstairs bedrooms and Mother was at work. He continued that conduct for a few weeks before he escalated the contact by using her hand to stroke his penis and, ultimately, by having sexual intercourse with her.

Victim 1 testified that she had sex with Maxey many times in the years that followed at the Galen Street house, in the Baptist church, and later at the Elm Street address. She stated that they often had sex a few times a week and sometimes a couple of times a day, and she identified several specific dates that they had sex, which coincided with memorable dates such as Maxey's birthday, Memorial Day, and dates of some of her high school basketball games. She indicated that although she did not want to have sex with Maxey, she was too scared to tell anyone because he told her that she "wouldn't like what happened" if she did, and that it was proper and in accord with God's wishes that he teach her about sex. When Victim 1 became pregnant by Maxey, he even convinced her to deny that the child was his and instead claim that the baby resulted from a "one night stand." Victim 1 did not suspect that Maxey was abusing either Victim 2 or Victim 3.

Victim 2 testified that she was 12 years old when the family moved into the Galen Street residence, and that within a few weeks of moving in, Maxey began touching her sexually. She stated that he began by rubbing her leg, and then by touching her vagina. At some point, he "forced [her] hand on his penis . . . . [and] [s]tarted to move it" until he ejaculated. About a week after this started, Maxey forced Victim 2 to perform oral sex on him by grabbing her neck and forcing her head down onto his penis. Approximately a couple of weeks after that, Maxey had

sexual intercourse with Victim 2 in the garage of the Baptist church. Victim 2 stated that such episodes occurred approximately twenty times before she turned 13, in the Galen Street house and in the garage at the church, and it also continued later at the Elm Street address. She did not report the abuse because Maxey told her no one would believe her, her mother would be angry with her, and it would ruin the family. Victim 2 did not suspect that Maxey was abusing either Victim 1 or Victim 3.

Victim 3, Maxey's youngest stepdaughter, testified that Maxey began touching her sexually in March 2012, when the family lived at the Elm Street address. She stated that he began by "french kissing" her and by kissing her neck, and later by touching her nipples. On the third occasion of such contact, Maxey also began to touch Victim 3's vagina with his hand, stating that "it was a woman's pleasure." Victim 3 said that she was afraid of Maxey "because he was scary," and because he told her that telling anyone would ruin the family.

In June 2012, Maxey and Mother had a falling out, and Mother and her four children moved out of the Elm Street home. In August 2012, Victim 3 was the first to disclose Maxey's abuse, when she informed her biological father while visiting him in Florida. That same evening, Victim 3 told her Mother by phone. When Mother shared Victim 3's accusations against Maxey with Victim 1, Victim 1 disclosed to Mother that Maxey had also sexually abused her. Mother then called the police, and called Victim 2 home from an outing with a friend. Victim 2 arrived before the police, and she disclosed that Maxey had sexually abused her, too. When the police investigator arrived, Mother told the police about Victim 3 and the police interviewed Victim 1, but Victim 2 was too upset to be interviewed. A couple of days later, Mother, Victim 1, and Victim 2 all went to the barracks of the state police and spoke with investigators for several hours.

Defense counsel objected at numerous points during the prosecutor's direct examination of the prosecution's witnesses. In particular, defense counsel raised multiple objections that the

prosecution's eliciting of the details of Maxey's sexual conduct was improper *Molineaux* evidence[2] because the conduct was not charged in the indictment. For example, defense counsel initially raised a *Molineux* objection to testimony from Victim 1 of the first time that Maxey had sexual intercourse with her during the Winter of 2008. The judge overruled counsel's objection because the conduct was specifically charged in the indictment. However, moments later, counsel's further objection was sustained when Victim 1 responded affirmatively to the prosecution's question, "Now, you had sex with him many times in the years to come; is that right?" Rather than strike Victim 1's testimony, the trial court charged the jury as follows:

> You will hear testimony that the Defendant allegedly committed uncharged crimes, or allegedly committed prior bad acts. This evidence is not being offered, and must not be considered, for the purpose of proving that the Defendant had a propensity or predisposition to commit the crimes charged in this case. It is being offered as evidence for your consideration regarding background information and for the purpose of completing the narrative of events which allegedly took place in this case. If you find the evidence believable, you may consider it for that limited purpose, and none other.

In addition to testimony from Maxey's victims and their family members, as well as the police officers who investigated their claims, the prosecution also called licensed clinical social worker Stefan Perkowski as a witness. Perkowski stated that he had worked in the field of Child Sexual Abuse treatment for 38 years, and had worked with over 3,100 child victims of sexual abuse during his career. He further indicated that he had no knowledge of any of the details of the case against Maxey, and was not on the stand to opine as to whether any of the alleged victims in the case were really abused. Rather, his function was to educate the jury about Child Sex Abuse Accommodation Syndrome ("CSAAS"), which is a unified approach to assessing potential abuse through five elements: (1) secrecy ("It's a hidden process, and the Children are

---

[2] The New York Court of Appeals recently explained that "the familiar Molineux rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged . . . ." *People v. Cass*, 965 N.E.2d 918, 923 (N.Y. 2012).

coached [by the abuser] how to keep it secret"), (2) helplessness ("Children . . . are dependent on [adults]"), (3) entrapment and accommodation ("As a Kid, you don't have freedom to go wherever you want to go, or whenever you want to go"), (4) delayed disclosure ("Kids . . . [are] reluctant to talk about it . . . . It can vary from days to years before they disclose"), and (5) recantation ("there will be a percentage . . . who will try to take the story back, in the mistaken notion that, if I take the story back, I don't have to deal with all of this").

On cross examination, defense counsel sought to discredit CSAAS in a number of ways. First, counsel sought to emphasize that CSAAS is not an actual diagnosis, but a "clinical opinion" based on a study of patients that is tied to a pattern of behavior rather than a particular child. Next, counsel elicited testimony that the source of the CSAAS theory, Dr. Roland Summit, expressed misgivings about the manner in which CSAAS had been used by prosecutors as proof of sexual abuse in particular cases. Perkowski admitted that Dr. Summit believed that it was a "misuse" of CSAAS to use it as a potential offer of proof. Finally, defense counsel sought to discredit Perkowski's testimony by showing bias: he elicited testimony that through the years Perkowski has testified as an expert for the prosecution 271 times and only 20 times for the defense, and that he is reimbursed for his time at $150 per hour, including travel time.

Despite defense counsel's efforts to raise reasonable doubts as to the veracity of the allegations against Maxey, the jury returned a verdict of guilty on all the charges. Thereafter, the trial court sentenced him to determinate terms of imprisonment of one year for each of the child endangerment counts, to a determinate term of four years on the six counts of third degree rape, to determinate terms of seven years for each of the two counts of second degree rape, and to an indeterminate term of 25 years to life for predatory sexual assault against a child.

Maxey appealed his conviction and sentence, arguing through appellate counsel (1) that the trial court erred in allowing the prosecution to "overload their case with *Molineux* evidence";

(2) that defense counsel rendered ineffective assistance by failing to "bring out evidence which supported Mr. Maxey's innocence in the matter" and to obtain an expert witness to rebut Perkowski's expert testimony on CSAAS; and, (3) that the prosecution's closing statement constituted prosecutorial misconduct. However, the appellate division panel unanimously affirmed the trial court's judgment, finding that defense counsel failed to preserve the *Molineux* issue for review on appeal, and that Maxey's *Molineux* argument was without merit because the evidence was admissible to "place the charged conduct in context," and to provide background information regarding the family dynamic and relationships between Maxey and the victims. *People v. Maxey*, 129 A.D.3d 1664, 1665 (N.Y. App. Div., June 19, 2015). The panel also found that Maxey failed to demonstrate on appeal that rebuttal expert testimony was available and would have assisted the jury, "or that was prejudiced by the lack of such testimony . . . especially in light of defense counsel's vigorous cross-examination" of Perkowski. *Id.* Lastly, the panel concluded that Maxey's allegations of prosecutorial misconduct on summation were without merit because the prosecutor's remarks "were a permissive response to the defense summation . . . ." *Id.* at 1666.

In June 2017, Maxey moved the trial court under New York Criminal Procedure Law § 440.10(1)(h) for an order vacating the judgment against him, which he argued was obtained in violation of his constitutional rights to effective assistance of counsel, due process of law, and a fair trial. In addition to reiterating arguments that defense counsel was ineffective for failing to seek or present exculpatory evidence, Maxey also argued that defense counsel was ineffective for not allowing him to testify on his own behalf, failing to object to both the admission of DNA evidence offered against him and the prosecution's closing argument, and failing to raise the issue of racial prejudice in jury selection. The trial court denied all aspects of Maxey's N.Y.C.P.L.

§ 440.10 motion. Maxey sought leave to appeal the trial court's decision, but the appellate division denied Maxey's request.

In November 2017, Maxey moved the trial court under N.Y.C.P.L. § 440.20 to set aside his sentence. He maintained that he was entitled to such relief because the sentence was obtained in violation of his rights to due process and to be free from excessive and cruel punishments. Specifically, Maxey argued that his sentence was unconstitutional because his indictment included multiplicitous counts, including the two counts of rape in the second degree, and three of the counts of rape in the third degree. He also argued that the sentence was excessive, and that the predatory sexual assault charge in the indictment was defective because the period alleged was not long enough. The trial court denied Maxey's motion in all respects. Maxey sought leave to appeal the trial court's decision, but the appellate division denied Maxey's request.

In January 2019, Maxey filed another motion under N.Y.C.P.L. § 440.10 to vacate the judgment against him, this time arguing that "newly discovered evidence" demonstrated that his constitutional rights to due process, a fair trial, and the effective assistance of counsel were violated. The trial court noted that Maxey's ineffective assistance of counsel claims had already been denied on direct appeal, and in each of his prior § 440 motions, and therefore denied the ineffective assistance portion of his motion without further discussion. The trial court also found that the two items of evidence that Maxey identified as "newly discovered" were not newly discovered evidence because one item had been turned over to the defense by the prosecution as part of pretrial discovery, and the other item was actually admitted into evidence at trial as People's Exhibit 32. Thus, the trial court denied Maxey's motion. Maxey sought leave to appeal the trial court's decision, but the appellate division denied Maxey's request.

Maxey is now before this Court seeking federal habeas relief, incorporating the arguments that he made on direct appeal and in his post-conviction motions, and maintaining principally (1) that he was deprived of his rights to due process and a fair trial when the trial court allowed the prosecution to "overload their case with *Molineux* evidence"; (2) that he was denied the effective assistance of counsel when defense counsel failed to present exculpatory evidence and failed to obtain an expert witness to counter the prosecution's expert on child sex abuse; and (3) that he was denied his rights to due process and a fair trial by the prosecution's misconduct during summation.

## II. LEGAL STANDARD

Maxey, a person in custody pursuant to the judgment of a State court, makes his habeas corpus application pursuant to 28 U.S.C. § 2254. The general legal principles applicable to such a claim are well-settled. Federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). Second, "[s]hould the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). Lastly, for claims adjudicated on the merits in state court, a federal court may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)).

28 U.S.C. § 2254(b)'s "exhaustion requirement is not satisfied unless the [petitioner's] federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). When state law procedurally bars a petitioner from exhausting his remedies for a federal claim, the district court may deem the claims exhausted but procedurally defaulted. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citations omitted). However, where the court makes such a determination, the petitioner is precluded from litigating the merits of the claim unless he can show cause for the procedural default and resulting prejudice, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., that he is actually innocent). *See Wainwright v. Sykes*, 433 U.S. 72, 87–91 (1977).

Further, with respect to the procedural default doctrine, the Supreme Court has held that claims underlying a habeas petition may be procedurally barred from habeas review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991). In a case where a state court decision rests on an independent state law ground adequate to support the judgment, federal habeas courts defer to the "state's interest in enforcing its laws." *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman*, 501 U.S. at 730–31). A ruling on an independent state law ground is adequate to support a judgment where the ruling is "firmly established and regularly followed" by the state courts. *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

Lastly, for those claims which were decided on the merits, AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate

10

level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted).

## IV. DISCUSSION

Because Maxey is proceeding on this petition *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, after a review of the papers of both parties, and the transcripts and records of the state court proceedings, in accordance with Rule 8 of the Rules Governing Section 2254 Cases, the Court finds that an evidentiary hearing is not necessary to address Maxey's arguments. *See also* 28 U.S.C. § 2254(e)(2).

A. The *Molineux* evidence did not violate Maxey's due process rights.

Pursuant to New York State law, evidence of prior bad acts by a criminal defendant – i.e., *Molineux* evidence – is admissible "to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan . . .; (5) the identity of the person charged with the commission of the crime on trial." *People v. Molineux*, 168 N.Y. 264, 293 (1901). In the present case, Maxey maintains that he was denied

11

his constitutional rights when the trial court erroneously allowed the prosecution to "overload their case" with *Molineux* evidence.

In particular, Maxey notes that during his trial, defense counsel requested that the trial court either preclude the evidence or give a *Molineux* instruction to the jury on multiple occasions: three times during Victim 1's testimony, once during the testimony of a witness called by the prosecution to testify as to the DNA sampling confirming Maxey's paternity of Victim 1's baby, once during Son's testimony that on several occasions he had seen Maxey in bed with Victim 1 or Victim 2, and once during a neighbor's testimony that she saw Maxey leaving his bedroom in shorts while Victim 1 lay in his bed. He states that the cumulative effect of allowing this testimony was to deprive him of his rights to due process and a fair trial.

In opposition, Respondent argues that Maxey's claim is both unexhausted and without merit. He points out that while Maxey did raise the *Molineux* issue on direct appeal, he is precluded from raising it here because he originally raised it only as an improper application of state law, and not as a federal due process claim. With respect to the merits, Respondent observes that *Molineux* is a state evidentiary rule, and that federal habeas relief does not lie for errors of state law. Moreover, even if Maxey's claim is cognizable in a federal habeas proceeding, Respondent maintains that the trial court properly found that the testimony was admissible under *Molineux* and its progeny, and that the Due Process Clause is not violated on evidentiary issues so long as the evidence is relevant and not barred for other reasons.

### i. Legal Principles

"[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore, even when a state court issues an erroneous evidentiary ruling, a district court may only issue a writ of habeas corpus "where petitioner can show that the error deprived [him] of a fundamentally fair

12

trial" or due process. *See Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citing, *inter alia*, *Chambers v. Mississippi*, 410 U.S. 284, 302–03 (1973)). "This standard places a heavy burden on a petitioner because evidentiary errors generally do not rise to constitutional magnitude." *Cox v. Bradt*, No. 10 CIV. 9175 CM JLC, 2012 WL 2282508, at *15 (S.D.N.Y. June 15, 2012) (internal quotation marks and citation omitted). Indeed, "[t]he erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal citation omitted).

### ii. Application

Here, Maxey is precluded from litigating the merits of his claim because he has not shown either cause for his procedural default or that he can prove he is actually innocent. In addition, even if he were not precluded from litigating the merits, Maxey has failed to demonstrate that the trial court's admission of any of the items of *Molineux* evidence that he challenges rise to the level of constitutional error, either on their own or collectively. Consequently, the Court finds that the claim must be dismissed.

First, as discussed above, a habeas petitioner who has procedurally defaulted on his claims in state court must show either cause for the default or actual innocence. Although Maxey raised the issue of *Molineux* evidence on direct appeal, he did not present a federal constitutional claim of a violation of his rights to due process and a fair trial. He argued only that the trial court improperly applied the state law evidentiary rule.[3] Because he does not now present any arguments showing cause for his failure to raise the federal claims on direct appeal, or any

---

[3] Maxey did raise the due process and fair trial issue in his N.Y.C.P.L. § 440 motion, but the trial court declined to consider it because he had the opportunity to raise it on direct appeal.

persuasive evidence that he is actually innocent, Maxey is barred from raising the claim at this juncture.

Second, even if Maxey's claim were not barred, there is no merit to his contention that habeas relief is warranted by the trial court's admission of the challenged testimony. On review, the state appellate division found the trial court properly permitted the testimony regarding uncharged offenses because "that testimony was relevant to establish the nature of the relationship between defendant and the eldest victim," and of other noncriminal "bad acts" because it "provided background information with respect to the nature of the relationship between [Maxey] and the victims . . . and provided information regarding the family dynamic, which explained why the victims delayed in reporting the abuse . . . ." *People v. Maxey*, 129 A.D.3d 1664, 1665 (N.Y. App. Div. June 19, 2015). Additionally, the appellate division concluded that any prejudicial effect of the testimony was both outweighed by its probative value, and minimized by the trial court's repeated limiting instruction to the jury, which – in accord with well-settled state law – charged the jury to consider the testimony only as background information, and not for the purpose of proving that Maxey had a propensity to commit the crimes. *See, e.g., People v. Dorm,* 903 N.E.2d 263, 264 (N.Y. 2009) ("[e]vidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity").

To date, the Supreme Court has expressly declined to decide whether admitting evidence of uncharged crimes violates due process even if it is used as propensity evidence. *See Estelle*, 502 U.S at 75 n. 5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Where there is no established Supreme Court law on the specific issue, and where the testimony was permitted under a New York law that arguably provides even greater

protection to the criminal defendant's due process rights than federal law, the Court will not find that the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)).

Lastly, the evidence cannot have been a violation of Maxey's constitutional rights to due process or a fair trial because it was not "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992); citing *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant")). The evidence against Maxey at trial was overwhelming, including credible testimony regarding regularly recurring acts of sexual abuse of multiple victims over multiple years, supported by records of contemporaneous events, and the testimony of investigators and relatives. In this context, the challenged testimony merely provided background information that – as the trial court stated – "complet[ed] the narrative of the events which allegedly took place in this case." The testimony was not "crucial" to the conviction. Maxey's claim is dismissed.

B. Ineffective Assistance of Counsel

Maxey maintains that he was denied his Sixth Amendment right to reasonably effective counsel when defense counsel failed to investigate or present exculpatory evidence from past investigations by Child Protective Services, and when he failed to call an expert to rebut the prosecution's expert testimony from licensed clinical social worker Perkowski about CSAAS. Respondent counterargues that Maxey did not receive constitutionally deficient representation, and points to legal obstacles to the introduction of the prior investigations, counsel's effective cross-examination of several key witnesses, and an absence of evidence that Maxey was

prejudiced by counsel's purported errors. The Court agrees with Respondent that Maxey's ineffective assistance claim is without merit.

### i. Legal Principles

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland* at 687–88. A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

### ii. Failure to Present Exculpatory Evidence

In the supplemental brief he submitted *pro se* on direct appeal, Maxey elaborated on the evidence that he believes defense counsel ought to have presented at trial on his behalf. Maxey summarized reports from Child Protective Services ("CPS") investigations conducted between 2006 and 2012, and pointed out specific instances in which Mother, Son, Victim 1, Victim 2, and Victim 3 at various times denied to investigators that Maxey abused the victims. Further, although defense counsel did call CPS investigator Aleia Mallette to the stand at trial, Maxey believes the direct examination was ineffective because counsel did not adequately contest the trial court's ruling that Investigator Mallette's testimony regarding Victim 1's denials was hearsay, and did not otherwise get the details of her investigation into evidence.

After considering Maxey's argument, the appellate division concluded that the trial court "properly determined that those records [of prior CPS investigations] were not admissible [under

16

N.Y. Social Services Law § 422(5)(b)], and properly sustained the [prosecution's] objection to hearsay testimony of the caseworker . . . ." *Maxey*, 129 A.D.3d at 1666. The state appellate court further noted that even though the caseworker's testimony was not permitted, "defense counsel cross-examined [Victim 1] with respect to her prior denials to caseworkers and police that [Maxey] was sexually abusing her." *Id*.

It is well-settled that "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance" to which a petitioner is entitled. *Parks v. Sheahan*, 104 F.Supp.3d 271, 286 (E.D.N.Y. 2015). Even if defense counsel had argued more vehemently for the inclusion of the caseworker's testimony, the trial court's ruling was on sound state law ground. *See* N.Y. Soc. Serv. Law § 422(5)(b) (". . . an unfounded report shall not be admissible in any judicial . . . proceeding . . . [except it] may be introduced into evidence: (i) by the subject of the report where such subject is a respondent in a [neglect or abuse] proceeding . . . or is a plaintiff or petitioner in a civil action . . . alleging the false reporting of child abuse or maltreatment; or (ii) in a criminal court for the purpose of prosecuting a [knowingly false report].") Moreover, as the state appellate division noted, Maxey's counsel managed to introduce the same information through Victim 1's testimony. *See, e.g., In re A.P.*, 183 A.D.3d 535, 536 (N.Y. App. Div. 2020) ("In any event, respondent's counsel extensively cross-examined this witness about her allegations that respondent had sexually abused her when she was a child.)

Accordingly, the Court finds that Maxey's argument provides no basis for habeas relief. *See also Lawrence v. Graham*, No. 1:12-CV-0814, 2014 WL 585301, at *10 (W.D.N.Y. Feb. 13, 2014) (concluding that an *ex post facto* challenge to a count of conviction "had little to no chance of success," and therefore that petitioner was not prejudiced by his trial counsel's failure to assert the claim).

### *iii. Failure to Rebut CSAAS Expert*

Maxey also claims that his counsel was ineffective for failing to call an expert for the defense to rebut the prosecution's expert testimony regarding CSAAS. Maxey raised this claim on direct appeal, and the appellate division rejected the argument because he failed to demonstrate that such expert testimony was available or would have helped his case, "especially in light of defense counsel's vigorous cross-examination of the [prosecution]'s expert witness." *Maxey*, 129 A.D.3d at 1665. Similarly in the present action, Respondent opposes Maxey's claim on the ground that there is no "Newton's third law" that requires defense counsel to counter each of the prosecutor's experts with an opposing expert, particularly where defense counsel's cross-examination was effective.

In the case of *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005), the Second Circuit observed that, "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel." *Gersten*, 426 F.3d at 607 (2d Cir. 2005) (citing cases). Although many defendants have since interpreted *Gersten* as establishing a bright line rule, the circuit court made a vital clarification several years later:

> . . . *Gersten* does not create a requirement that defense attorneys in child sex abuse cases such as this must always consult with or call a CSAAS expert in rebuttal; rather, the opinion states that in the absence of expert consultation or use of an expert rebuttal witness, counsel may provide reasonable representation in the face of expert testimony on CSAAS by "educat[ing] [themselves] sufficiently on the scientific issues" to challenge such evidence effectively."

*Spicola v. Unger*, 703 F. App'x 51, 53 (2d Cir. 2017) (citation omitted).

In Maxey's case, defense counsel's cross examination of the prosecution's CSAAS expert, licensed clinical social worker Perkowski, demonstrated that counsel had educated himself sufficiently on the scientific issues to challenge the prosecution's evidence effectively. Maxey's counsel was clearly familiar with the research behind CSAAS, and possessed at least

a basic awareness of its history and critiques. For instance, defense counsel emphasized that CSAAS simply identifies a frequent pattern of behavior exhibited by many victims of child sexual abuse, and was not a diagnosis of any victims in the present case. Further, defense counsel used his familiarity and awareness to attack the utility or relevance of CSAAS in criminal proceedings, noting that the author of the seminal CSAAS paper, Dr. Roland Summit, believed that some prosecutors were misusing CSAAS because it should *not* serve as proof of abuse in any one case. Finally, defense counsel challenged witness Perkowski's credibility by pointing out that he was paid $150 per hour for his services, and that in 90% of the more than 250 times he had testified in court, Perkowski was a witness for the prosecution rather than defense.

Based on a careful review of the record, the Court concludes that "[b]ecause of his demonstrated familiarity with Perkowski and with the subject matter, the Court cannot find that it was unreasonable, as a matter of trial strategy, to refrain from consulting with, or offering the testimony of an expert and, instead, [to] rely entirely on cross-examination to attack Perkowski's credentials, CSAAS theory, and the theory's application to the instant case." *Wallace v. Poole*, No. 10-CV-00722 MAT, 2011 WL 6370596, at *8–9 (W.D.N.Y. Dec. 20, 2011). *See Spicola v. Unger,* No. 13-CV-020S, 2015 WL 4761451, at *1 (W.D.N.Y. Aug. 12, 2015), *aff'd*, 703 F. App'x 51 (2d Cir. 2017) (denying habeas relief because "the failure to call a rebuttal witness is not, in and of itself, sufficient to establish that counsel's performance was deficient."). Consequently, Maxey's ineffective assistance of counsel claim must be dismissed.

## C. Prosecutorial Misconduct

Third, Maxey maintains that the prosecution's closing statement constituted prosecutorial misconduct. He states that he was denied due process and the right to a fair trial because the prosecutor's summation was clearly intended to inflame the jury against him, play upon their emotions, improperly place his character into their deliberations, and "improperly make them

19

believe the [prosecution]'s witnesses over the defense." Respondent argues that this claim is

partially procedurally barred, and that the remainder is without merit.

When Maxey raised this issue in his counseled brief on direct appeal, he identified three

particular statements from the summation that he believed to be improper. In the first statement,

the prosecutor showed the jury a picture of Victim 1 and her child, who she claims was fathered

by Maxey, and said:

> What does this mean? I'll tell you what it means, in my opinion. What that means,
> the baby, that goes to his character. That's who – we're talking about character in
> this case. What kind of a person rapes his step-daughter?

In the second statement, the prosecutor said:

> Now, these girls are making this up and lying? Now, think about it. They're that
> good. Particularly [Victim 1] and [Victim 2]. They're going to lie to Mom and
> Grandma on August 4th [when they disclosed Maxey's abuse]. They're going to lie
> to Investigator Carr on August 6th. Then, they're going to come down and see me
> four or five times, in my office, and lie to me. Going to lie to the Grand Jury. They're
> going to lie to Dr. Lenane. And they're going to come in here and lie to you . . . If
> they're not telling you the truth, you think they could feign emotion like that? They
> can feign those tears?

In the third statement, the prosecutor referred to testimony from an investigating police officer

about Victim 1's tears when she first reported the abuse: "She's crying. Very upset. Would she

be like that if she made this up? I think not."

The appellate division rejected Maxey's prosecutorial misconduct claim for two reasons.

First, the court noted that defense counsel only objected to the first statement, and hence that

the second and third statements were not preserved for appellate review. *Maxey*, 129 A.D.3d at

1666 (referring to N.Y.C.P.L. § 470.05's requirement that "the party claiming error" make his

position with respect to an alleged impropriety known to the court). Additionally, the court

concluded that "[t]he prosecutor's remarks were a permissive response to the defense

summation," because defense counsel had called the credibility of the victims into question. *Id.*

*i. Legal Principles*

To succeed on a claim of prosecutorial misconduct in a habeas proceeding, the petition must show that the prosecutor engaged in "egregious misconduct ... amount[ing] to a denial of constitutional due process." *Walker v. Bennett*, 262 F. Supp.2d 25, 34 (W.D.N.Y. 2003) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990); *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48 (1974)) (internal quotation marks omitted). A prosecutor's conduct constitutes a denial of due process if it causes "substantial prejudice by . . . infecting the trial with unfairness . . ." *Bellamy v. City of New York*, 914 F.3d 727, 762 (2d Cir. 2019). The Second Circuit has articulated a three-part test to assess "whether prosecutorial misconduct caused 'substantial prejudice' . . . which considers the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *Bellamy*, 914 F.3d at 762 (quoting *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 95 (2d Cir. 2014)).

*ii. Application*

To begin with, the Court notes that under the procedural default doctrine, it may only review the first of the three statements listed above for prosecutorial misconduct. N.Y.C.P.L. § 470.05(2) is a "firmly established and regularly followed" law that requires a party claiming error to object "at the time of such ruling or instruction or at any subsequent time when the court has an opportunity of effectively changing the same." "Where a state appellate court refuses to consider the merits of [a p]etitioner's claims based on failure to preserve the point by objection at trial, then a federal court may not review those merits in a collateral habeas corpus proceeding, unless [the p]etitioner can demonstrate both good cause for and actual prejudice resulting from his procedural noncompliance with the contemporaneous objection rule." *Walker v. Speckard*, 806 F. Supp. 420, 423 (W.D.N.Y. 1992) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). As noted above, the state appellate division declined to consider the latter two

statements of alleged prosecutorial misconduct when considering Maxey's direct appeal because they had not been preserved by a contemporaneous objection. Further, Maxey has failed to show good cause for the failure. Consequently, the Court is without authority to consider the statements in this proceeding.

With respect to the single statement that is before the Court, the Court agrees with the state appellate division that "[t]he prosecutor's remarks were a permissive response to the defense summation," because defense counsel had called the credibility of the victims into question. "It is well established under New York law that a prosecutor's summation comments regarding a witness's credibility are not considered improper vouching when offered as a fair response to attacks by the defense counsel during summation on the credibility of a prosecution witness." *McManus v. Vann*, No. CV-18-3800 (JFB), 2019 WL 3767538, at *11 (E.D.N.Y. Aug. 9, 2019) (collecting New York cases). In addition, the Second Circuit has held that although the prosecution may not "vouch" for the credibility of its witnesses, "when the defense counsel have attacked . . . the credibility of the government [witnesses], the prosecutor is entitled to reply with rebutting language suitable to the occasion." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (citing *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994); *United States v. Cosentino*, 844 F.2d 30, 34 (2d Cir. 1988)).

Here, defense counsel's summation consisted almost entirely of challenges to the victims' credibility. Defense counsel raised questions about the victims' failure to keep a diary about dates of their abuse, about discrepancies in the dates which Victim 2 gave to investigators and those she testified to, about inconsistencies in Victim 1's testimony about when the abuse started and the dates of the basketball games after which Maxey's abuse occurred, and about Victim 3's susceptibility to influence by her biological father when she first reported Maxey's abuse. Perhaps most pointedly, defense counsel questioned the veracity of the victims' testimony in

light of their denials of abuse in response to investigations by Child Protective Services between 2009 and 2011.

Accordingly, the prosecutor's summation served as rebuttal to defense counsel's attacks by putting the victims' allegations and any inconsistencies in their testimony in a broader context. With respect to Victim 1, part of that context included her child, who Victim 1's testimony and substantial DNA evidence indicate was fathered by Maxey. Following defense counsel's objection to the prosecutor's statement, and the trial court's ruling allowing the statement, the prosecutor rounded out the context by recounting the basic implications of the evidence he had presented to the jury at trial: "He impregnates his Step-Daughter at age seventeen. He's about forty-three years old. He's living in the same house on Elm Street. She's in High School. So, is it a leap to think that he didn't start having sex when she was fourteen, as she tells you?"

Given defense counsel's attack on the witness's credibility on summation, and the prosecutor's reliance on the evidence in the record rather than "extraneous proof," the Court finds that the prosecutor's subsequent efforts to rebut that attack did not so infect the trial with unfairness as to constitute a denial of due process, particularly since evidence pointing to Maxey's guilt was so strong. *See, e.g., Velazquez v. Poole*, 614 F. Supp.2d 284, 315 (E.D.N.Y. 2007) (citing *Sales v. Harris*, 675 F.2d 532, 541 (2d Cir. 1982) (highlighting a difference between personally vouching for the credibility of a witness and arguing that a witness is credible)).

D. Maxey's Amended Petition

In amendments to his petition, Maxey raises several other arguments, many of which he alleges are based on "New Evidence." These claims include additional arguments about the ineffectiveness of his trial counsel for both failing to present evidence he had and failing to obtain additional evidence, and for failing to object to various issues at trial; a multiplicitous indictment; and an excessive sentence. Respondent maintains that the claims Maxey raises in his amended

petition are untimely, and that even if they were timely they are without merit. Assuming *arguendo* that Maxey's claims are timely, the Court agrees that there is no merit in any of Maxey's additional claims.

### i. Additional Ineffective Assistance Claims

Maxey's additional ineffective assistance claims involve two exhibits which Maxey identifies as "Newly Discovered Evidence"; the assertion that his counsel did not allow him to testify at trial; the claim that his counsel should have obtained additional evidence including the victims' psychiatric records, a private investigator and an expert to testify regarding the absence of physical evidence of abuse; and that counsel failed to object to the DNA evidence, his paternity of Victim 1's child, and racial discrimination in jury selection.

"Exhibit A" of Maxey's "Newly Discovered Evidence" is a note from a police investigator to the prosecutor from the month prior to trial, along with a copy of a final bill from the utility company – dated May 3, 2008 – for the house the family inhabited prior to moving to the 33 Galen Street address. The other "new" evidence, "Exhibit B," is a "change in status" document from Mother's employer – dated April 9, 2008 – which indicates a change of address to the Galen Street address. Maxey maintains that his attorney was ineffective for not introducing this evidence at trial because it undermines his conviction by proving that the family was not at the Galen Street address in the Winter of 2008, when he was charged with sexually abusing Victim 1 and Victim 2. However, even if the evidence were "Newly Discovered,"[4] the Court finds that defense counsel's failure to present it to the jury was not constitutionally deficient representation.

---

[4] The state trial court considering whether this evidence constituted "Newly Discovered Evidence" on Maxey's second § 440.10 motion observed that this evidence was not new, but that Exhibit A had been turned over to defense counsel in pretrial discovery, and that Exhibit B was actually a trial exhibit.

The utility bill does not indicate the date that the family moved out of the prior address to Galen Street; it merely lists the date that the utility company issued the final bill to the prior address. Moreover, the change of status form merely indicates the date upon which Mother submitted her change of address to her employer.

With respect to Maxey's other arguments for ineffective assistance, Maxey fails to present any evidence – even in the form of an affidavit or affirmation – to support his claims. First, Maxey presents no evidence detailing what he would have or could have testified to, or any indication that his testimony would have materially affected the outcome of the trial. With respect to the psychological records, the private investigator, or the defense expert, Maxey fails to make a persuasive argument any records even exist, or that a private investigator or expert would have or could have developed evidence favorable to the defense. Under these circumstances, the Court declines to find defense counsel's representation deficient.

Finally, as it relates to defense counsel's alleged failure to object, the Court notes that it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Moreover, decisions such as when to object at trial typically fall "'squarely within the ambit of trial strategy' and therefore do not support a claim of ineffective assistance," particularly where there is little reason to believe that such objections were meritorious. *United States v. Krangle*, 142 F. App'x 504, 505 (2d Cir. 2005) (summary order) (citing *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). In this context, and with no evidence to the contrary, Maxey's arguments here must fail because they "amount to little more than a roving, superficial critique of trial counsel's strategy." *Constant v. Martuscello*, 119 F. Supp.3d 87, 148 (E.D.N.Y. 2015), aff'd, 677 F. App'x 727 (2d Cir. 2017). This is especially true regarding Maxey's claim of racial discrimination during jury selection, which, after a thorough review of the trial court transcript, this Court finds to be without basis.

*ii. Multiplicity in the Indictment*

Maxey argues that his indictment was multiplicitous. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999) (citing *United States v. Holmes*, 44 F.3d 1150, 1153–54 (2d Cir. 1995)). Such an indictment would violate the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once. See U.S. Const. amend. V; *United States v. Dixon*, 509 U.S. 688, 696 (1993). However, in the present case, the charges in Maxey's indictment were not multiplicitous. A review of the indictment shows that each of the counts differed from each of the others by either victim, date, or elements charged. Accordingly, this claim is without merit.

*iii. Excessive Sentence*

Lastly, Maxey claims that his sentence was excessive. However, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977). Indeed, it is well-settled that a challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *Mathis v. Conway*, No. 05-CV-6727 (MAT), 2009 WL 3785692, at *7–8 (W.D.N.Y. Nov. 12, 2009) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

Maxey's sentence here was within the statutory range. Under New York state law, the maximum term of imprisonment permitted for endangering the welfare of a child, a class A misdemeanor, was one year until the statute was amended in April 2019. *See* N.Y. Penal Law § 260.10(3); § 70.15(1) (McKinney 2018). The maximum term of imprisonment for rape in the third degree, a class E felony, is twelve years. *See* N.Y. Penal Law § 130.25(2); § 70.07(4)(e).

The maximum term of imprisonment for rape in the second degree, a class D felony, is fifteen years. *See* N.Y. Penal Law § 130.30(1); § 70.07(4)(d). The maximum term of imprisonment for predatory sexual assault against a child, a class A-II felony, is an indeterminate term of twenty-five years to life. *See* N.Y. Penal Law § 130.96; § 70.07(4)(a). Thus, Maxey's sentence of one year of imprisonment each on the two child endangerment counts, four years of imprisonment each on the third degree rape counts, seven years of imprisonment each on the second degree rape counts, and twenty-five years to life on the predatory sexual assault charge all fall within the range permitted by applicable statute, and therefore do not present a federal constitutional issue. Consequently, Maxey's excessive sentence claim is untenable on habeas review.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Maxey's application for habeas relief [ECF No. 1] is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Maxey has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:        February 1, 2023
              Rochester, New York

                          ENTER:

                          _Charles J. Siragusa_
                          CHARLES J. SIRAGUSA
                          United States District Judge

27